IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY RAY CRAIN, #1091464, § | | |
| Petitioner, § | | |
| § | No. 3:04-CV-2205-G | |
| v. § | ECF | |
| § | | |
| DOUGLAS DRETKE, DIRECTOR, TDCJ-CID,§ | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner challenges his conviction for aggravated sexual assault of a child. *The State of Texas v. Bobby Ray Crain*, No. F-0175228-N (195th Jud. Dist. Ct., Dallas County, Tex., March 14, 2002). Petitioner was sentenced to twenty-five years confinement. On July 24, 2003, the Eleventh District Court of Appeals affirmed Petitioner's conviction. *Crain v. State*, No. 11-02-00137-CR, slip op., 2003 WL 21710565 (Tex. App. – Eastland 2003, no pet.). Petitioner did not file a petition for discretionary review.

On January 20, 2004, Petitioner filed a state application for writ of habeas corpus. *Ex parte Crain*, Application No. 58,777-01. On May 12, 2004, the Court of Criminal Appeals denied the petition on the findings of the trial court.

On September 30, 2004, Petitioner filed this federal petition. Petitioner argues: (1) the

evidence was insufficient to support his conviction; (2) he received ineffective assistance of trial and appellate counsel; and (3) the jury was unconstitutionally selected and impaneled.

On November 19, 2004, Respondent filed his answer. On December 1, 2004, Petitioner filed his traverse. The Court finds the petition should be denied.

## II. Factual Background

The following factual background is taken from the appellate court opinion.

> The record shows that [Petitioner] was charged and convicted of indecency with a child for engaging in sexual contact with his daughter, K.W., and his daughter's half-sister, T.W. (whom he also raised), by touching their breasts with his hands. [Petitioner] was also charged and convicted of aggravated sexual assault of T.W. by penetrating her sexual organ with his sexual organ when she was under the age of 14. Finally, [Petitioner] was charged and convicted of the sexual assault of T.W. by penetrating her mouth with his sexual organ.
>
> At the time of the trial, K.W. was 12 years old and T.W. was 16 years old. K.W. testified that she went to visit [Petitioner] during spring break in 2001. [Petitioner] was living with his sister, Patricia Ann Crain. K.W. arrived on Saturday and planned to spend the whole week. However, [Petitioner's] behavior after coming in from a party on Saturday night caused K.W. to leave early. K.W. testified that, after she and her younger sister went to sleep on adjacent couches in the living room, she was awakened at about 3:00 a.m. by [Petitioner]. He was touching her breast, over her clothes, with his hand. K.W. testified that [Petitioner] was lying where her younger sister had been sleeping and that [Petitioner] had moved K.W.'s younger sister to another couch. When [Petitioner] touched K.W.'s breast, it scared her. K.W. jumped up but then lay back down. [Petitioner] then reached his hand over again, and K.W. jumped up and went to the restroom. When she came out of the restroom, she noticed that [Petitioner] was not wearing any clothes but was trying to cover himself with a blanket. [Petitioner] asked K.W. if she wanted to watch television. K.W. answered negatively and then went to her Aunt Patricia's room where she slept for the rest of the night. The next day, K.W. called her mother and asked her to come pick her up and take her home. K.W. was crying.
>
> K.W.'s mother, K.W.'s stepfather, and T.W. all asked K.W. what was wrong, but all she told them at the time was that [Petitioner] "was playing too much." That evening after they returned home, K.W.'s mother and stepfather called her into their room to discuss things. K.W. told them what had happened. Her mother ultimately called the police. Subsequently, while K.W. was going through counseling, K.W. told her counselor that she had seen [Petitioner] in sexual encounters with T.W.

K.W. testified at trial that, one time when her younger sister opened the door to [Petitioner's] bedroom, she saw T.W. "over [Petitioner's] face." They were on the bed, and T.W. did not have on any pants or panties. On another occasion, [Petitioner] had sent K.W., her brother, and her younger sister outside, which he did often, keeping T.W. inside with him. While she was outside, K.W. saw [Petitioner] and T.W. through the window. T.W. was sitting on the couch; [Petitioner] was on his knees on the floor situated between her legs and facing her. [Petitioner's] hands were on T.W.'s thighs, and K.W. saw him "push up" from the waist.

T.W. also testified about her encounters with [Petitioner]. The first time something happened between them, T.W. was 11 years old. While she was asleep, [Petitioner] reached under the blanket and touched her breasts. [Petitioner] did that on more than one occasion. [Petitioner] then progressed to "going under [her] shirt" and, eventually, to having sex with her. T.W. recalled that she was 12 years old the first time [Petitioner] penetrated her. T.W.'s mother was at work. [Petitioner] sent the younger children outside and took T.W. into his bedroom. [Petitioner] put T.W. on the bed and told her that he was going to have sex with her and that she should not tell anybody. [Petitioner] took off T.W.'s gown, took off his clothes, pulled T.W.'s underwear aside, and had sex with her by placing his penis into her vagina. T.W.'s statement indicated that the pain was "excruciating," that she had a blood stain in her underwear, and that it hurt to walk. According to T.W., [Petitioner] sexually assaulted her many times. T.W. also testified that [Petitioner] "performed oral sex on [her]" and that, when she was 13 or 14 years old, [Petitioner] placed his penis in her mouth. T.W. recalled one occasion in particular when she told [Petitioner] "no" and tried to walk out of the house. [Petitioner] slammed her hand in the door and then hit her in the face. T.W. attempted to fight back.

When she was 13 years old, T.W. contracted a sexually transmitted disease from her father. However, because she was afraid to tell anyone that [Petitioner] was molesting her and because [Petitioner] was at the hospital with her and her mother, T.W. said that some boy had given her the disease. T.W. testified that [Petitioner] was the only person during that time with whom she had "had sex." Even after K.W. came forward and told about [Petitioner's] behavior, T.W. denied that anything happened between her and [Petitioner]. Eventually, however, she made an outcry to her mother but did not tell her mother everything because her mother started crying.

The victims' mother testified at trial. She testified regarding K.W.'s outcry, which was substantially similar to K.W.'s testimony at trial. The victims' mother also testified that T.W. subsequently admitted the abuse – but only after being confronted with the fact that K.W. had reported to her therapist that K.W. had seen [Petitioner] abusing T.W. Detective Patricia SanMartino testified regarding T.W.'s outcry.

Joanna Elaine Bass Parker testified that she had observed [Petitioner] behaving inappropriately with T.W. when T.W. was about ten years old. Parker worked with [Petitioner] and the victims' mother. Parker saw [Petitioner] leaning over in the car

    kissing T.W.'s neck.  Parker also noticed that, while T.W. was outside playing, [Petitioner] would grab her or hug her from behind and that his hands "would always land either on her upper private part" or "below her bully button" in her "private area."

    [Petitioner's] sister, Patricia, testified and corroborated K.W.'s testimony as far as coming to visit for spring break, leaving early, and coming into Patricia's bedroom to sleep.  However, Patricia did not think that K.W. was acting strangely. [Petitioner] testified and denied the allegations made against him. [Petitioner] testified that K.W. and T.W. were accusing him of "sexual abuse to get [their younger sister] back."

*Crain v. State*, No. 11-02-00137-CR, slip op. at 2-4, 2003 WL 21710565 at *1-3.

### III.  Discussion

**1.**    **Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>     (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**    Page -4-

principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh*, 521 U.S. at 336. The petition in this case is subject to review under the AEDPA.

**2.      Procedural Bar**

Respondent argues that the following claims are procedurally barred: (1) Petitioner received ineffective assistance of appellate counsel; and (2) Petitioner's trial counsel was constitutionally ineffective because counsel (a) failed to adequately choose the jury; (b) failed to seek advice from Petitioner regarding selection of the jury; (c) failed to investigate the case; and (d) failed to advise Petitioner that he could have selected the trial court to determine guilt or innocence.[1] Petitioner did not raise these claims in his state habeas application or in a petition for discretionary review. The Court finds the claims are procedurally barred.

Further, Respondent argues Petitioner's insufficiency of the evidence claim is procedurally barred. The records reflects that Petitioner raised his insufficiency of the evidence claim on appeal, but he failed to file a petition for discretionary review. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claim.[2] The claim cannot be reviewed by a state court because it is too late to file a petition for discretionary review. If this Court were to

---

[1]Respondent also argues that Petitioner's claim that the jury was unconstitutionally impaneled is procedurally barred. Petitioner, however, raised this claim in his state habeas petition. The claim is therefore not procedurally barred.

[2]A claim of insufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus. *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981). *See West v. Johnston*, 92 F.3d 1385, 1398, n.18 (5th Cir. 1996); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge          Page -5-**

require Petitioner to return to state court to exhaust this claim, it would be subject to dismissal. Federal courts ordinarily will not review questions of federal law when such a state procedural bar exists.

Petitioner's claims are procedurally barred for failure to present the claims to the Texas Court of Criminal Appeals either in a petition for discretionary review or a state writ. When a claim has not been reviewed by the state's highest court, this Court may find such claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722 n.1 (1991). The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest court of the state and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id*.

Petitioner has not presented his claims to the Texas Court of Criminal Appeals. If this Court required him to do so, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine. TEX. CODE CRIM. PRO. Ann. art. 11.07, § 4. That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (footnote omitted). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law . . . ." *Id.* (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a

petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has not shown sufficient cause for his failure to present these claims to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on these claims.

**3.      Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel because his counsel: (1) was not prepared for trial; and (2) failed to subpoena defense witnesses.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

(a) Trial Preparation

Petitioner argues his counsel was "not prepared for what the D.A. presented on him." (Pet. Mem. Ground Number 2). He does not explain this statement, nor does he state what further preparation was needed. He also claims that his attorney did not subpoena defense witnesses. He has not submitted affidavits from any witnesses stating that they would have testified at trial and would have testified favorably for Petitioner if subpoenaed. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (finding "hypothetical or theoretical testimony will not justify the issuance of a

writ . . . ."). Petitioner's conclusory allegations are insufficient to support habeas relief. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

(b) Jury Claim

Petitioner argues his jury was unconstitutionally selected and impaneled because it only contained one African-American juror. Petitioner is African-American and he alleges that he was not tried by a jury of his peers because even the one African-American juror was female and "was well up in age." (Pet. Mem. Ground Number 3).

A claim of discriminatory jury selection may be raised when the jury venire fails to reflect a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357 (1979). To establish a *prima facie* violation of the cross-section requirement, a petitioner must show that: (1) the under-represented group is a distinctive group in the community; (2) the group's under-representation is not fair and reasonable in relation to the group's number within the community; and (3) the under-representation is due to the systematic exclusion of the group from the jury selection process. *Id*. at 364.

In this case, Petitioner has failed to show that African-Americans and/or other recognized minorities were not fairly represented in the venire and the alleged under-representation was due to systematic exclusion in the jury-selection process. *Id*. at 363-64. Petitioner's conclusory allegations are insufficient to support habeas relief. *See*, *Ross*, 694 F.2d at 1012. Further, although the Sixth Amendment guarantees that a petit jury will be selected from a pool of names representing a cross-section of the community, the Supreme Court has expressly declined to hold that the petit jury which is actually chosen must mirror the community and reflect the various

distinctive groups in the population. *Batson v. Kentucky*, 476 U.S. 79 (1986), (*quoting Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). Petitioner's claim should be denied.

**4.      Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed June 20, 2006.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO OBJECT</u>

The United States District Clerk shall serve a copy of these findings and recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings and recommendations to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).